**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 08-20921-CR-GRAHAM/TORRES

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RODNEY UPSHAW,

      Defendant.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S**
**MOTION TO SUPPRESS STATEMENTS AND PHYSICAL EVIDENCE**

This matter is before the Court on Defendant Rodney Upshaw's Motion to Suppress Statements and Physical Evidence [D.E. 18] and the government's Response in opposition thereto [D.E. 19].[1] Defendant seeks to suppress physical evidence seized after his arrest as well as post-arrest statements based on alleged Fourth Amendment violations. An evidentiary hearing was held on this matter on November 26, 2008. At the conclusion of the hearing, both sides were granted leave to, and did, file supplemental memoranda to the Court. [D.E. 35, 38]. Having carefully considered Defendant's motion and the written memoranda filed in support of and opposition thereto, the testimony of the witnesses and the exhibits admitted at the hearing, and

---

[1]      This matter was referred to the undersigned Magistrate Judge by the Honorable Donald L. Graham for a Report and Recommendation [D.E. 32], pursuant to 28 U.S.C. § 636(b)(1) and S.D. Fla. Mag.J.R. 4.

the oral arguments of counsel, and being fully advised in the premises, the Court recommends that Defendant's motion to suppress be Denied in its entirety for the reasons forth below.

## I.   FACTUAL FINDINGS

Defendant was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  The following facts describe the events that led to his indictment.

### A.   *Background*

On September 12, 2008, at approximately 6:45 p.m., Detective Ryan Howett and two other members of Miami-Dade Police Department's Tactical Narcotics Team were driving in an unmarked police vehicle in the vicinity of 66th Street and 18th Avenue in Miami when they saw a group of five or six men "loitering" on the sidewalk in front of an open field.  A car was parked about two to three feet away from the group, facing east; it was situated just south of the group, partly on the west-bound right-of-way and partly on the roadway.  Det. Howett testified that the area was known to officers as a high-narcotics area; he himself had made several narcotics-related arrests there.  Det. Howett, who was driving, pulled up behind the parked car and parked parallel to it, next to the rear tires, without blocking the back or front of the car.

The two officers with Det. Howett exited the vehicle and walked behind the parked car to approach the group of men from the west.  Det. Howett exited the vehicle and began walking past the parked vehicle with the goal of approaching the group of men from the east in case anyone fled in that direction.  All of the officers wore

clothing that identified them as police officers and all carried guns, though none of the weapons were drawn.

As Det. Howett walked past the passenger's side of the parked vehicle, he saw through the lowered front window that two individuals occupied the car. They both were looking away from Det. Howett and toward the two officers who were approaching the men on the sidewalk. Det. Howett observed the driver (Defendant Rodney Upshaw) lift his shirt with his left hand, remove a handgun from his waistband, place the gun in the center console of the car, which was open, then close the top of the console.

Det. Howett waited a few seconds, then casually announced his presence and told the occupants to place their hands on the ceiling of the car. His weapon was not drawn. He told the passenger to hand him the car keys which he placed on the roof of the car. Then Det. Howett asked the passenger to step out of the car, briefly patted him down for officer safety, and finding no weapons, walked the passenger to the front of the car and seated him on the sidewalk.

Det. Howett then asked Defendant to exit the car, placed handcuffs on him, and conducted a brief pat-down for weapons. The pat-down lasted approximately 10 seconds. Although the detective did not fear for his own safety, he thought Defendant had acted suspiciously in taking the gun out of his waistband and placing it inside the console upon seeing the officers walk up to the men on the sidewalk. Had Defendant possessed a concealed weapons permit, Det. Howett explained, he probably would not have acted the same way upon observing law enforcement officers. After confirming

that Defendant did not have any weapons on him, the detective took Defendant's driver's license and gave it to another officer to run a records check.  The records check, which took about 1 - 1 ½ minutes, revealed that Defendant did not have a concealed weapons permit and, further, that he was a convicted felon and therefore not entitled to possess a firearm.  Accordingly, Det. Howett arrested Defendant and then retrieved the firearm from the center console of the car.  The entire process from the time Det. Howett exited his vehicle to the time Defendant was placed under arrest took approximately 4 - 5 minutes.[2]

Following his arrest, and after receiving *Miranda* warnings, Defendant admitted possessing the gun for his protection.

### B. *Motion to Suppress*

Defendant claims that his Fourth Amendment rights were violated when he was seized and his identification taken for the purpose of gathering additional evidence pertaining to the illegal behavior Det. Howett suspected he was engaging in.  [D.E. 36 at 2].  Defendant contends that when Det. Howett seized him by ordering him to place his hands on the ceiling of the car, exit the car, and then cuffing and frisking him, the detective had no reason to believe that Defendant was either a convicted felon or did

---

[2]      At the hearing, the defense called to the stand Kelvin Bacon, the passenger in Defendant's car.  Mr. Bacon contradicted some of Det. Howett's version of events.  He testified that he watched Det. Howett approach the car through the rear-view mirror mounted on the passenger's door.  Mr. Bacon said that Det. Howett approached with his gun drawn.  Mr. Bacon said he never saw Defendant with a gun in his hand.  And Mr. Bacon testified that Defendant could *not* have placed an object inside the center console because he (Mr. Bacon) was leaning on the console with his left elbow as he watched the detective through the rear-view mirror.  We have weighed the credibility of the two witnesses, and, to the extent the testimony differs, we fully credit the detective's while discounting Mr. Bacon's.

not have a concealed weapons permit.  Even if Det. Howett had been authorized to conduct the patdown, Defendant argues that the seizure of his driver's license was done in order to discover evidence of a crime, i.e., whether he was in lawful possession of the gun, and the seizure therefore violated his Fourth Amendment rights. Defendant accordingly moves to suppress all evidence obtained as a result of the illegal search and seizure.[3]

## II.   ANALYSIS

Police encounters with citizens generally fall within one of three categories:  (1) a consensual voluntary encounter; (2) a detention, or *Terry* stop; or (3) an arrest.  As discussed in greater detail below, this case is governed by the analysis of *Terry* and its progeny.  *Terry v. Ohio,* 392 U.S. 1 (1968); *Illinois v. Wardlow,* 528 U.S. 119 (2000); *United States v. Franklin*, 323 F.3d 1298 (11th Cir. 2003).

A "*Terry* stop" is a narrow exception to the general rule that conducting a search without a warrant violates the Fourth Amendment.  *See, e.g., United States v. Gordon,* 231 F.3d 750, 754 (11th Cir. 2000) (citations omitted).  Under *Terry,* police officers are allowed to conduct a brief, investigatory stop "when the officer has a reasonable, articulable suspicion that criminal activity is afoot."  *Wardlow,* 528 U.S. at 123

---

[3]     In addition to seeking suppression based on a Fourth Amendment violation, Defendant initially sought to suppress any statements he made prior to being advised of his rights under *Miranda v. Arizona,*  384 U.S. 436 (1966).  [D.E. 18 at 5-6].  At the hearing, defense counsel explained that his primary concern was the timing of Defendant's statements vis-a-vis when the *Miranda* warnings were administered.  After hearing the testimony of Miami-Dade Police Officer Scott Ogden on this issue, defense counsel conceded there was no *Miranda* issue to argue.  We agree.

(quoting *Terry*, 392 U.S. at 30).   Several well-established principles apply when analyzing the validity of a *Terry* stop.

### A.     ***Governing Principles***

First, reasonable suspicion is a less demanding standard than probable cause. It "requires a showing considerably less than preponderance of the evidence" and only "a minimal level of objective justification for making the stop." *Id.*  There is a minimal level of objective justification when "the facts available to the officer at the moment of the seizure . . . 'warrant a man of reasonable caution in the belief' that the action taken was appropriate[.]" *Franklin,* 323 F.3d at 1301 (quoting *Terry,* 392 U.S. at 22).  Put another way, reasonable suspicion of criminal activity "requires more than a hunch." *United States v. Blackman,* 66 F.3d 1572, 1576 (11th Cir. 1995).

Second, an individual's presence in an area of expected criminal activity, in and of itself, is insufficient to support a reasonable, particularized suspicion that an individual was involved in criminal conduct.  *See Wardlow,* 528 U.S. at 124 (citing *Brown v. Texas,* 443 U.S. 47 (1979)).  However, the fact that a stop occurred in a "high crime area" is among the relevant contextual considerations in a *Terry* analysis.  *Id.* (citing *Adams v. Williams,* 407 U.S. 143, 144, 147-148 (1972)).

Third, the court must examine the totality of the circumstances known to an officer at the time of the detention to determine whether the arresting officer had a "'particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Hunter,* 291 F.3d 1302, 1306 (11th Cir. 2002); *United States v. Smith*, 201 F.3d 1317 (11th Cir. 2000).  We view the totality of the circumstances in light of the officer's

special training and experience, because "behavior, seemingly innocuous to the ordinary citizen, may 'appear suspect to one familiar with [criminal] practices." *Smith,* 201 F.3d at 1323 (citations omitted). Even if none of a suspect's actions are facially criminal, taken together they can provide trained police with reasonable suspicion. *United States v. Arvizu,* 534 U.S. 266, 267 (2002) ("[The Fourth Amendment] allows officers to draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available.").

### B.   *Defendant's Detention*

Defendant first argues that he was effectively arrested when he was ordered out of his car, cuffed, and searched. [D.E. at 3]. He claims that no reasonable person would have felt free to leave under the circumstances. [*Id.* (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (holding that a person is "seized" within the meaning of the Fourth Amendment "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.")]. At the time, he says, Det. Howett had no reason to believe that he had committed any crime. [*Id.* at 3-4]. He therefore moves to suppress the gun that was later retrieved from his car on the ground that his "seizure" without a warrant or probable cause violated the constitutional safeguards of the Fourth Amendment.

We must first determine whether Defendant was detained, which as already discussed is permissible under *Terry* when supported by reasonable suspicion, or whether he was arrested, which requires a probable cause belief that the person is involved in criminal activity. If Defendant was subjected to a *de facto* arrest and that

arrest was not supported by probable cause, any evidence gathered as a result of the unconstitutional seizure must be suppressed. *United States v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003).

The Eleventh Circuit has articulated four factors that may be considered when evaluating whether a *Terry* stop has evolved from a detention to an arrest: (1) the law enforcement purposes served by the detention; (2) the diligence with which officers pursued the investigation; (3) the scope and intrusiveness of the detention; and (4) the duration of the detention. *United States v. Virden*, 488 F.3d 1317, 1321 (11th Cir. 2007) (moving the defendant's car without his permission to another location for purposes of a canine sniff constituted a seizure and was unreasonable in the absence of probable cause); *United States v. Street*, 472 F.3d 1298, 1306 (11th Cir. 2006) (discussing the same four factors used to aid in differentiating between a *Terry* stop and an arrest). The fact that officers order a suspect out of a car or handcuff the suspect does not automatically transform an investigatory stop into an arrest. *United States v. Aldridge*, 719 F.2d 368, 371 (11th Cir. 1983) (an investigative stop does not become an arrest merely because the detaining officer orders the suspect out of the car); *United States v. Kapperman*, 764 F.2d 786, 791 n.4 (11th Cir. 1985) (officers may take reasonable action, based on the circumstances, to protect themselves during *Terry* stops, or to maintain the status quo).

Considering these four factors in the context of all the circumstances present in our case, we conclude that the initial encounter between Defendant and Det. Howett was not an arrest but rather an investigatory detention of the sort permitted by *Terry*.

The law enforcement purpose served in detaining Defendant was proper. Det. Howett observed suspicious conduct that gave rise to a reasonable suspicion that Defendant might be committing a crime; it was proper and reasonable for the detective to detain Defendant to ascertain his identity and confirm or dispel his suspicion. Det. Howett did not tell Defendant he was under arrest. Rather, he calmly but quickly ordered the passenger and then Defendant out of the car, patted them both down as a safety measure, cuffed Defendant, then immediately requested identification from Defendant and ran a records check. The detective diligently and appropriately took measures to investigate the situation. The cuffing and brief patdown for officer safety were not unduly intrusive and were certainly reasonable in light of Defendant's possession of a weapon only a moment earlier. And finally, the detention was extremely brief, lasting at most a few moments from the time Det. Howett announced his presence to the time he arrested Defendant upon completion of the investigation.

Upon consideration of the *Virden* factors, we conclude that the initial "seizure" of Defendant was an investigatory detention, not an arrest. Defendant was not arrested for Fourth Amendment purposes until after Det. Howett learned he was a convicted felon and formally placed him under arrest.

This determination leads to the next question we must decide: was the investigatory stop here supported by reasonable suspicion that Defendant was engaged in criminal activity? If it was not, it exceeded the scope of *Terry* and violated Defendant's Fourth Amendment rights.

Det. Howett testified that when he looked into the window of the car in which Defendant and Mr. Bacon were seated, both men were looking away from him. Their attention was focused on the other officers as they approached the group of men on the sidewalk; neither occupant was aware of the detective's presence. That is when Det. Howett observed Defendant remove a concealed firearm from his waistband, place it in the center console of the car, then close the top of the console. According to the detective, Defendant's attempt to hide his gun when police officers arrived on the scene was suspicious because any person with a concealed weapons permit would not have attempted to hide his weapon merely upon sighting police officers.

Under the totality of the circumstances, we find that the detective's observation of Defendant's actions, coupled with the fact that the car was parked in an area known for high narcotics activity and a group of 5 or 6 men were "loitering" just a few feet away from Defendant's car, gave Det. Howett a reasonable basis to believe that Defendant might be committing a crime. *See, e.g., United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991) (highly experienced officer's suspicion was reasonably aroused when he saw the defendant parked in a parking lot at 4:00 a.m. in a high crime area, when the business served by the lot were closed, and upon departing the lot the defendant attempted to evade the officer; officer's detention and request for the defendant's driver's license and an explanation of his conduct were proper).

We therefore conclude that Det. Howett was justified in briefly detaining Defendant in order to ascertain his identity and confirm or deny his suspicion of Defendant's involvement in criminal activity. "A brief stop of a suspicious individual,

in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. at 146 (upholding the stop of an individual on the basis of reasonable suspicion derived from an informant's tip). The patdown for officer safety clearly was permissible as Defendant had just been in possession of a gun and might possess another weapon. *Id.* (when officer has a justifiable belief that the person whose suspicious behavior he is investigating at close range is armed and presently dangerous, he may conduct a limited protective search for concealed weapons). Here, the frisk for weapons was limited and brief; it took approximately 10 seconds and freed Det. Howett from the apprehension that Defendant might still pose a danger to him or others. The fact that the detective was not particularly concerned for his safety at that moment because he felt in control of the situation did not obviate the need to ensure that Defendant was not in fact armed and dangerous.

Det. Howett then took Defendant's driver's license and gave it to another officer to run a records check. The detective clearly was entitled to confirm Defendant's identity during the course of the *Terry* stop. "Our decisions make clear that questions concerning a suspect's identity are a routine and accepted part of many *Terry* stops." *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 186 (2004) (citing *United States v. Hensley*, 469 U.S. 221, 229 (1985)). If an officer has "articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain

him briefly while attempting to obtain additional information." *Hayes v. Fla.*, 470 U.S. 811, 816 (1985) (citing *Hensley*, 469 U.S. at 229, 232, 234); *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975) ("when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion. . . .  The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.") (citation omitted); *Adams*, 407 U.S. at 146; *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (once police have validly detained a suspect following a traffic stop, "plainly they were entitled under the decisional law to conduct a variety of checks on the driver and his car, including questioning the driver about the traffic violation, requesting consent to search the car, and running a computer check for outstanding warrants.").

Defendant argues that Det. Howett's "seizure" of his identification "violated the Fourth Amendment because it was done in order to discover evidence of a crime (*i.e.*, whether [Defendant] was in lawful possession of the gun)." [D.E. 35 at 3].  He cites *United States v. Askew*, 529 F.3d 1119 (11th Cir. 2008) (*en banc*), which in part reiterates the well-established principle that a *Terry* search is limited to determining whether a suspect is armed, and any non-safety based search that is conducted to uncover evidence of criminal activity based on nothing more than reasonable suspicion exceeds the scope of *Terry* and is impermissible under the Fourth Amendment.  *See,*

*e.g.,* 529 F.3d at 1129 ("applying the balance struck in *Terry*, courts are constrained to suppress evidence obtained during such a stop if it is the fruit of a search that was not necessary to protect the investigating officers or others nearby".).

In *Askew*, police stopped the defendant because he wore clothing similar, but not identical, to the clothing worn by an armed robber. *Id.* at 1121. A *Terry* frisk revealed nothing. *Id.* Later, while preparing the defendant for an identification show-up to the complaining witness, an officer attempted to unzip his outer jacket to reveal to the complainant what the defendant was wearing under the jacket. *Id.* The zipper hit a hard object and the defendant pushed the officer's hand away. *Id.* This aroused the officer's suspicions and, even after more time elapsed, officers forcibly unzipped the defendant's jacket and discovered a gun. *Id.* at 1121-22.

*Askew* concluded that the officers' actions in searching the defendant after the initial frisk had failed to produce any weapon exceeded the bounds of *Terry*. *Id.* at 1133. The court determined that the goal of the officers in conducting a further search of the defendant was to obtain certain physical evidence that might identify him as having committed the crime for which he had been stopped. *Id.* Because they did so in an attempt to obtain probable cause for the commission of a crime, the court found that the search violated the defendant's Fourth Amendment rights. *Id.*

*Askew* is entirely inapposite. The officers in that case conducted a full-blown evidentiary search of the defendant without any basis for doing so. No such search occurred in our case. Rather, after a brief and appropriate *Terry* frisk, conducted *after* the officer had already seen the weapon in Defendant's possession, Det. Howett took

Defendant's license in order to ascertain Defendant's identity and run a records check on him. It is well-established that requesting identification from a suspect is reasonable and permissible under *Terry*. In fact, Det. Howett could have asked Defendant for his name and date of birth and provided that information to another officer for purposes of a records check. The actual license is essentially irrelevant to the inquiry here. Once the records check revealed Defendant's status as a convicted felon, he was formally arrested for possessing a firearm.

We conclude that a valid *Terry* stop took place in this case. We, therefore, recommend that Defendant's motion to suppress based on the seizure and search of his person be denied.

### C.   *Search of Defendant's Vehicle*

Even if Det. Howett's seizure and search of Defendant were not valid under *Terry*, there is still no basis to suppress evidence (i.e., the gun) seized in this case. Det. Howett seized the gun from the *car*, not from Defendant's person. The detective saw Defendant place the gun in the center console of the car, and that is the location from which he retrieved it after placing Defendant under arrest.

Given these facts, we find that Det. Howett was entitled to search the center console of the car incident to Defendant's arrest. *See, e.g., United States v. Gonzalez*, 71 F.3d 819, 827 (11th Cir. 1996) (citing *New York v. Belton*, 453 U.S. 454, 460 (1981) (officers may contemporaneously conduct, incident to a defendant's lawful arrest, a warrantless search of the passenger compartment of an automobile as well as any open or closed containers found in this area of the automobile)).

We further find that Det. Howett had probable cause to search the car because he knew from the records check that Defendant was a convicted felon who was not permitted to possess a firearm – yet the detective had just seen Defendant attempting to hide one inside the car.  Under the automobile exception to the Fourth Amendment's warrant requirement, Det. Howett was permitted to conduct a warrantless search of the car and thereby retrieve potential evidence of a crime, i.e., the gun that had been in the possession of a convicted felon.  *See, e.g., United States v. Strickland*, 902 F.3d 937, 942 (11th Cir. 1990) ("It is well settled that a vehicle may be searched without either permission or a warrant if there is probable cause to believe that it contains contraband or other evidence which is subject to seizure under law and exigent circumstances necessitate the search or seizure.").

Even if Det. Howett did not have probable cause to believe that a crime had just been committed, the detective was still entitled to conduct a *Terry* search of the car in order to retrieve the gun from the console.  Under *Michigan v. Long*, an officer is permitted to search those areas of an automobile in which a weapon may be placed or hidden "if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer[] in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."  463 U.S. 1032, 1049 (1983) (citing *Terry*, 392 U.S. at 21).  In *Long*, the Court reiterated that the validity of an officer's investigative or protective conduct under *Terry* "is always the 'reasonableness in all

circumstances of the particular governmental intrusion of a citizen's personal security.'" *Id.* at 1051 (citing *Pennsylvania v. Mimms*, 434 U.S. 106 (1977)).

Det. Howett had an articulable and objectively reasonable belief that Defendant might be armed and dangerous. He had just seen Defendant, upon detecting the presence of the police, take a gun from under his shirt and hide it in the console of the car. The detective had a reasonable suspicion that Defendant might be engaged in criminal activity, might be concealing another weapon, and might be able to gain access to the gun that he had just placed in the console. Thus, the detective had an independent basis for conducting a *Terry* search of the car and seizing the gun from the center console. *See, e.g., Aldridge*, 719 F.2d at 372 (citing *Long* and holding that the search of the passenger compartment of the defendant's car was valid under *Terry* where the hour was late, the officer was acting alone in investigating three men whom he reasonably believed were involved in criminal activity, and he observed the handle of a revolver protruding from under the front seat); *Riley v. City of Montgomery, Ala.*, 104 F.3d 1247, 1251 (11th Cir. 1997) (a warrantless weapons search of a suspect's car, pursuant to a limited detention, does not violate the Fourth Amendment if the police have reasonable articulable suspicion to justify such a limited detention; citing *Long* and *Terry).*

For the foregoing reasons, we also recommend that the evidence seized from the car not be suppressed.

### III.   CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge does hereby **RECOMMEND** that Defendant Rodney Upshaw's Motion to Suppress Statements and Physical Evidence [**D.E. 18**] be **DENIED** in its entirety.

Pursuant to Local Magistrate Rule 4(b), the parties have **until December 8, 2008 by 9:00 a.m.,** to serve and file written objections, if any, with the Honorable Donald L. Graham, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 2nd day of December, 2008.

_\_/s/ Edwin G. Torres_____
EDWIN G. TORRES
United States Magistrate Judge